UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

ELI LOPEZ

CRIMINAL ACTION

NO. 11-125-JJB

## RULING AND ORDER ON MOTION TO SUPPRESS

This matter comes before the Court on defendant Eli Lopez's motion to suppress (Doc. 12), which the government opposes (Doc. 15). The Court held a hearing on January 19, 2012, and the parties agreed to stand on their pre-hearing briefs.

I.

The testimony of the investigating officer in this case, then-East Baton Rouge Parish Sheriff's Deputy Nicholas LoCicero, established the following facts.[1] On the evening of August 23, 2011, Deputy LoCicero was conducting foot patrols at the Broussard apartment complex on Coy Avenue in Baton Rouge. LoCicero had on previous days received from concerned citizens several complaints of loud noise, loitering, and public drinking at the complex, which he finally became able to investigate.

During his foot patrol around the parking lot and courtyard of the complex, LoCicero noticed two men sitting in a Chevrolet Silverado pickup truck parked in one of the complex's spaces. Eventually observing that the men had been sitting there for several minutes "conducting no lawful business," as his report describes, LoCicero got into his patrol car and pulled up near the Silverado. LoCicero got out of his car and began conversing in English[2] with the man sitting

---

[1] LoCicero's testimony was the only evidence put on by either side.
[2] LoCicero testified that Lopez had no problem understanding English. Prior to the hearing, Lopez maintained that he did not speak English. At the hearing, he received the benefit of a Spanish interpreter. Lopez wrote a confession in English that was submitted into evidence as Government Exhibit 3.

1

in the driver's seat of the truck, the defendant Eli Lopez, regarding the men's presence in the parking lot.  Lopez told the officer he and his companion were going to the store.

As his report details, "prior to releasing Lopez," LoCicero asked Lopez for identification.  Lopez provided a Louisiana identification card which was, LoCicero asserts, a clear fake due to its shoddy and dated appearance, which LoCicero estimated had not been issued by Louisiana since the 1990s.  As it turns out, Lopez had several outstanding warrants for various traffic violations, which LoCicero discovered once he ran Lopez's information on the computer in his patrol car.  LoCicero arrested Lopez for the warrants and, in conducting a search incident to arrest, discovered a loaded magazine in Lopez's pocket.  He then asked Lopez why he had a loaded magazine, and Lopez told him he recently purchased a gun to protect himself due to a string of robberies at and near the apartment.  Lopez related that the gun itself was inside his apartment at the complex and consented to let Deputy Cody Williams, who at some point arrived on the scene to assist Deputy LoCicero, retrieve the gun from his apartment.  Lopez told his family members, who were watching his encounter with the police, to allow Deputy Williams to retrieve the gun, and he did so.

Later, defendant admitted to having illegally entered the United States approximately eight years ago.  After being transported to the police station, he was advised of his *Miranda* rights and also signed a consent-to-questioning form.  Lopez eventually gave a written confession regarding the gun purchase and possession.  Agents from Immigration and Customs Enforcement (ICE) later confirmed his illegal presence in the country.

On September 22, 2011, Lopez was indicted on one count of possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5)(A).

II.

The Fourth Amendment to the Constitution of the United States guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Searches and seizures conducting are generally found unreasonable unless based on probable cause and executed pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 357 (1967). In cases involving warrantless seizures of persons or evidence, the government bears the burden of demonstrating the lawfulness of the police action. *United States v. Roch*, 5 F.3d 894 (5th Cir. 1993).

The Fourth Amendment is only implicated, though, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 (1968). The test views the totality of the circumstances and asks whether a reasonable person would have believed himself free to terminate the police encounter. *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991). Thus, "police questioning, by itself, does not fall within the ambit of Fourth Amendment protections." *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002). Police officers "may generally ask questions of [an] individual, ask to examine the individual's identification, and request consent to search … as long as the police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 434-35 (citations omitted).

Investigatory stops, which are brief seizures by the police, do not require probable cause to arrest and are instead justifiable when articulable facts support a reasonable suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 21. This requires looking at the cited reason for suspicion against an objective standard, *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th

Cir. 1995), and must be based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981).

Evidence directly derived from a Fourth Amendment violation is generally deemed "fruit of the poisonous tree" and must be suppressed from the guilt phase of a defendant's trial. *See, e.g., United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010).

III.

The facts presented show that, upon consensually receiving Lopez's identification card, Deputy LoCicero ran the card and found numerous outstanding warrants. At that point, LoCicero had probable cause to arrest Lopez pursuant to those warrants. Thus, the sole disputed issue presented by this motion is whether LoCicero seized Lopez before asking for his identification. If so, the seizure can be justified only if LoCicero had a reasonable suspicion at that time based on articulable facts that Lopez and/or his companion had committed or was about to commit a crime. If not, this falls into the category of simple police questioning which does not implicate the Fourth Amendment and thus does not require an articulated reason for suspicion.

A.

On the day in question, LoCicero was wearing a clearly marked police uniform and had been patrolling the complex for an indeterminate amount time. By the time LoCicero approached Lopez's truck, he had already driven his patrol around the complex with its lights on and parked it a few spots down from Lopez. Within Lopez's line of vision, LoCicero had spoken with the driver of another car a few yards away whose music was too loud.

The testimony did not established why LoCicero approached Lopez's truck. LoCicero's proffered explanation is devoid of an articulable reason for suspecting Lopez had or was about to

4

commit a crime. The sole reason why he approached Lopez's truck was because he and his companion had been sitting there for several minutes "conducting no lawful business." This sounds suspiciously like a police euphemism for profiling. It is the presence of *unlawful* business, not the absence of "lawful business," which serves as the touchstone for reasonable suspicion analysis. LoCicero had no articulable reason for approaching Lopez's car. Nevertheless, mere approach and questioning alone does not trigger Fourth Amendment protections. *Bostick*, 501 U.S. at 435; *see also United States v. Brown*, 209 Fed.Appx. 450, 452 (5th Cir. 2006) (defense counsel conceding at oral argument that officer's initial approach of parked car does not implicate Fourth Amendment). At that point, therefore, LoCicero's interaction with Lopez remained completely lawful.

B.

It is unclear how long LoCicero spoke with Lopez, but LoCicero's report—filed only a couple of days following the incident—clearly implies that, prior to asking for identification, he perceived the situation to have ripened into a stop. LoCicero's precise language—"prior to releasing Lopez"—could not be given meaning without necessarily acknowledging that a stop of some sort had already occurred. Citizens who are free to terminate a police encounter do not need "releasing."

LoCicero attempted during the hearing to backtrack on what he meant in his report, but he did ultimately acknowledge the report's language implied a stop had occurred. While contending that the imprecise language he used in the report created a misimpression as to whether Lopez had been free to leave at that point, he freely admitted his police report provided a better picture of what happened that night because it reflected his memory of the incident mere days after it occurred. LoCicero's testimony effectively contradicts his report even though he

5

admits the report provides a more accurate portrayal of how the events unfolded that day because it was written in the wake of the incident. Giving the report a straight-forward reading compels the conclusion that LoCicero thought the questioning ripened into a stop at some point prior to him asking for Lopez's identification card.

However, an officer's perception of the legal effect of his actions is not dispositive. *Cf. Soffar v. Johnson*, 237 F.3d 411, 455 (5th Cir. 2000), *vacated and reh'g en banc granted*, 253 F.3d 227 (2001), *rev'd in part by Soffar v. Cockrell*, 300 F.3d 588 (5th Cir. 2002) (en banc) (officer's testimony regarding his perception of suspect's invocation of right to counsel is "most certainly not dispositive of the ultimate legal issue" of whether the invocation was effective); *Soffar v. Johnson*, 237 F.3d at 467, n. 3 (Garza, J., dissenting) (agreeing with majority's determination that officer's impression of invocation not dispositive). Whether a seizure occurred is a mixed question of law and fact. *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997). Thus, whether LoCicero's perception that a seizure occurred prior to asking Lopez for his identification card is not dispositive of whether a seizure had in fact occurred at that point.

*Bostick* makes plain that neither mere police questioning nor a request for a person to present an identification card implicate the Fourth Amendment. Here, nothing in the record suggests LoCicero's questioning during the encounter, prior to obtaining the identification card which provided probable cause, ripened into a seizure. LoCicero testified that he made no show of force, did not raise his voice, and did not tell Lopez he was required to do anything. Moreover, LoCicero testified that Lopez was very friendly and cooperative throughout their encounter, continuing even after the arrest occurred. The Court therefore concludes that there in fact existed nothing that would create in a reasonable person the impression that they were not

free to terminate the encounter. LoCicero had not "seized" Lopez within the meaning of the Fourth Amendment at the time he asked for his identification card. Once Lopez provided the card, LoCicero had reasonable suspicion it was a fake, and running Lopez's ID through the system yielded several outstanding warrants, which of course gave him sufficient reason to arrest Lopez. Thus, the search incident which revealed the magazine and the subsequent voluntary consent to search his apartment for the gun were not improper.

### IV. CONCLUSION; ORDER

Accordingly, defendant Eli Lopez's motion to suppress (Doc. 12) is DENIED.

Signed in Baton Rouge, Louisiana, on February 21, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**